OPINION
{¶ 1} Appellant, Brian Jones, appeals from the January 7, 2008 judgment entry of the Portage County Municipal Court, Kent Division, in which he was sentenced for contempt.
 {¶ 2} Appellant, an attorney with the Portage County Public Defender's Office, was appointed on August 15, 2007, to represent Jordan Scott ("defendant Scott") on a *Page 2 
charge of misdemeanor assault in State v. Scott, Case No. 07 CRB 1180. The case was set for trial the following day.
 {¶ 3} According to appellant's affidavit, on the morning of the trial, he met with six other clients before receiving the Scott file. Appellant then met with defendant Scott for twenty minutes. When the case was called, appellant informed Portage County Municipal Court Judge John J. Plough ("Judge Plough") that he would be filing a jury demand. After Judge Plough stated that the matter was set for trial, appellant indicated that he had been appointed to the case the day before. Appellant voiced concerns that he would not be effective as defendant Scott's counsel and would not feel comfortable representing him. Appellant said that he would need more time to talk to the witnesses. Judge Plough replied that three witnesses were present and the trial would proceed after lunch. Appellant indicated that he needed to speak with other witnesses whom the state had not subpoenaed.
 {¶ 4} Following the break, the trial court reconvened and proceeded with the Scott case. As appellant attempted to raise a pretrial matter, Judge Plough asked him whether he was ready to start the trial. Appellant replied that he was not and that he did not have an opportunity to interview the witnesses. Judge Plough warned appellant that he would be held in contempt of court if he did not proceed with the trial. Over objection by defense counsel, Judge Plough ordered the trial to commence. Appellee, the state of Ohio, waived its opening statement and appellant informed the trial court that he was not able to participate in the case. Judge Plough threatened appellant that if he did not proceed, he would be taken to jail immediately. In response, appellant cited In re Sherlock (1987), 37 Ohio App.3d 204, a case from the Second District. Judge Plough *Page 3 
dismissed the argument, maintaining that the Second District is not pertinent.[1] Judge Plough wanted appellant to proceed with the trial, and if a conviction resulted, the defendant could file an appeal on the basis of ineffective assistance of counsel. Appellant did not comply. The trial court found appellant in direct criminal contempt and ordered him to be taken into custody.[2]
 {¶ 5} Later that day, appellant appeared with a representative from the Public Defender's Office who requested that appellant be provided a bond option and that the matter be set for a hearing. The trial court entertained the request, issued a standard bond of ten percent of $1,000, and scheduled a hearing.[3]
 {¶ 6} On August 17, 2007, Robin Bostick, a Portage County Public Defender, filed an affidavit requesting that Judge Plough recuse himself from the contempt proceedings against appellant. The affidavit of disqualification was denied by Portage County Court of Common Pleas Judge John Enlow ("Judge Enlow") on August 23, 2007.
 {¶ 7} A hearing was held before Judge Plough on August 24, 2007. Appellant provided supplemental written materials as well as testimony from John Wesley Hall ("Hall"), an attorney qualified as an expert witness in legal ethics.[4] *Page 4 
 {¶ 8} Pursuant to its January 7, 2008 judgment entry, the trial court found appellant guilty of direct criminal contempt, and sentenced him to a $250 fine, $150 suspended, and three days in jail, three days suspended on the condition that he pay $100 plus costs and lost wages of $48.50 to the witnesses who appeared for trial on August 16, 2007. The trial court further ordered that appellant may do Community Work Service at the rate of $50 for every eight hours to pay off both the fines and court costs. Appellant's sentence was stayed pending appeal. It is from that judgment that appellant filed a timely notice of appeal and makes the following assignments of error for our review:[5]
 {¶ 9} "[1.] The Portage County Court of Common Pleas erred in not recusing Judge Plough from the sentencing hearing that occurred on August 24, 2007.
 {¶ 10} "[2.] The trial court improperly found appellant in direct criminal contempt of court for refusing to proceed with trial.
 {¶ 11} "[3.] The appellate court was not the proper forum for curing the types of defects at issue in this matter."
 {¶ 12} In his first assignment of error, appellant argues that the Portage County Court of Common Pleas erred in not recusing Judge Plough from the August 24, 2007 sentencing hearing because Judge Plough demonstrated bias or prejudice toward him throughout the proceedings.
 {¶ 13} Because this is a jurisdictional issue, our review is de novo. See, e.g., Burns v. Daily (1996), 114 Ohio App.3d 693, 701. *Page 5 
 {¶ 14} The Ohio Code of Judicial Conduct establishes standards for the ethical conduct of judges. Canon 3(E)(1)(a) provides: "[a] judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: * * * [t]he judge has a personal bias or prejudice concerning a party or a party's lawyer, or personal knowledge of disputed evidentiary facts concerning the proceeding[.]"
 {¶ 15} When a party to a proceeding pending before a municipal court judge alleges that the judge has a bias against a party, he or she "may file an affidavit of disqualification with the clerk of the court in which the proceeding is pending." R.C. 2701.031(A). The affidavit must comply with R.C. 2701.031(B). The clerk must follow R.C. 2701.031(C), including notifying the proper common pleas court judge. The common pleas judge then has the sole authority to decide if the municipal court judge is biased or prejudiced. See R.C. 2701.031(E).
 {¶ 16} In the case at bar, an affidavit of disqualification was filed with the clerk, which was denied by Judge Enlow. Because R.C. 2701.031(E) grants the common pleas court with the sole authority to rule on the disqualification of a municipal court judge because of bias, we have no jurisdiction to consider the issue. See Beer v. Griffith
(1978), 54 Ohio St.2d 440, 441-442; State v. Hunter,151 Ohio App.3d 276, 2002-Ohio-7326, at ¶ 21; State v. Nichols, 4th Dist. No. 07CA3183,2008-Ohio-3324, at ¶ 12; Hardy v. Hardy, 8th Dist. No. 89905,2008-Ohio-1925, at ¶ 11; State v. Tripp, 3d Dist. No. 13-06-17,2007-Ohio-1630, at ¶ 20.
 {¶ 17} Appellant's first assignment of error is without merit. *Page 6 
 {¶ 18} In his second assignment of error, appellant contends that the trial court improperly found him in direct criminal contempt of court for refusing to proceed with trial.
 {¶ 19} R.C. 2705.01 provides that a court "may summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice."
 {¶ 20} This court stated in Cawley, supra, at 2-4:
 {¶ 21} "Contempt is an act or omission that substantially disrupts the judicial process in a particular case. In re Contempt of Morris (1996),110 Ohio App.3d 475, 479 * * *. It is described as the disobedience of a court order, conduct that brings the administration of justice into disrespect, or conduct that tends to embarrass, impede or obstruct a court in the performance of its functions. Denovchek v. Bd. of TrumbullCty. Comm'rs. (1988), 36 Ohio St.3d 14, 15 * * *. Municipal courts have the authority to punish contempt. R.C. 1901.13(A)(1). When reviewing a finding of contempt, an appellate court applies an abuse of discretion standard. State ex rel. Ventrone v. Birkel (1981), 65 Ohio St.2d 10, 11
* * *; Dozer v. Dozer (1993), 88 Ohio App.3d 296 * * *. Abuse of discretion is more than an error of law; rather, it implies that the trial court's attitude is unreasonable, arbitrary or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219 * * *. [Regarding this standard, we recall the term "abuse of discretion" is one of art, essentially connoting judgment exercised by a court which neither comports with reason, nor the record. State v. Ferranto (1925), 112 Ohio St. 667,676-678.] *Page 7 
 {¶ 22} "Contempt is either direct or indirect. Direct contempt is misbehavior, which is committed in the presence of or near the court as to obstruct the administration of justice. In re Lands (1946),146 Ohio St. 589, 595 * * *; In re Contempt of Morris, supra, at 480. Punishment for direct contempt may be summarily imposed. R.C. 2705.01. The determination of what conduct constitutes direct contempt is a matter within the sound discretion of a trial court. State v. Kilbane (1980),61 Ohio St.2d 201 * * *, paragraph one of the syllabus.
 {¶ 23} "Contempt is further classified as civil or criminal. Such classification depends on the character and purpose of the punishment.Denovchek, 36 Ohio St. 3d at 16; Brown v. Executive 200, Inc. (1980),64 Ohio St.2d 250, 253 * * *. Criminal contempt arises from offenses against the dignity or process of the court, while civil contempt concerns violations, which are on the surface against a party for whose benefit a court order was made. In re Cox, 1999 Ohio App. LEXIS 6266, [at] 11 (Dec. 23, 1999), Geauga App. Nos. 98-G-2183 and 98-G-2184, unreported, citing Kilbane, supra, at 205. Sentences for criminal contempt are punitive in nature and designed to vindicate the authority of the court, whereas civil contempt sanctions coerce an individual to comply with a lawful court order. Id., citing Kilbane." (Parallel citations omitted.)
 {¶ 24} "Where a trial court denies a continuance in a criminal trial and, as a consequence, defense counsel refuses to participate in the trial for fear that the defendant would receive ineffective assistance of counsel and that counsel would be in violation of DR 6-101 (A)(2) and 7-101(A)(3), the court may commit error under the circumstances of the particular case in finding defense counsel in contempt and in *Page 8 
imposing a fine." In re Sherlock, supra, at paragraph two of the syllabus. "Defense counsel should not be required to violate his duty to his client as the price of avoiding punishment for contempt." Id. at paragraph three of the syllabus.
 {¶ 25} In the instant matter, the record reveals that appellant was appointed to represent defendant Scott the day before the case was set for trial. Appellant orally requested a continuance, which was denied by Judge Plough.
 {¶ 26} "In evaluating a motion for a continuance, a court should note,inter alia: the length of the delay requested; whether other continuances have been requested and received; the inconvenience to litigants, witnesses, opposing counsel and the court; whether the requested delay is for legitimate reasons or whether it is dilatory, purposeful, or contrived; whether the defendant contributed to the circumstance which gives rise to the request for a continuance; and other relevant factors, depending on the unique facts of each case."State v. Unger (1981), 67 Ohio St.2d 65, 67-68.
 {¶ 27} Here, the facts demonstrate that a continuance was warranted. Although appellant did not request a specific length of time, the complete denial of any continuance by Judge Plough under the present circumstances was an abuse of discretion. Appellant had never requested and/or received any other meaningful continuances in this matter. Any inconvenience to the judicial system would have been minimal in comparison to Judge Plough's proposal to have this court reverse him.
 {¶ 28} In addition, the continuance requested by appellant was for legitimate reasons and his conduct did not give rise to the need for one. Again, appellant was permitted merely two hours to familiarize himself with the facts, the witnesses, and his client, before preparing and constructing a defense based upon his findings. The mere *Page 9 
fact that defendant Scott was charged with misdemeanor assault does not render the matter simple or inconsequential. Based on the information available to appellant, there may have been any number of potential witnesses and defenses pertinent to the assault charge and it was his obligation to conduct a complete investigation.
 {¶ 29} Under these circumstances, effective assistance and ethical compliance were impossible as appellant was not permitted sufficient time to conduct a satisfactory investigation as required by Disciplinary Rules 6-101 and 7-101 of the Code of Professional Responsibility, Rule 1.1 of the Ohio Rules of Professional Conduct, and the Sixth Amendment of the United States Constitution. It would have been unethical for appellant to proceed with trial as any attempt at rendering effective assistance would have been futile. Appellant properly refused to put his client's constitutional rights at risk by proceeding to trial unprepared.
 {¶ 30} "The rights of indigent defendants to appointment and effective assistance of counsel are neither lofty philosophical ideals nor rights that only function to give us all faith in the criminal justice system. * * * The rights to appointment of counsel and to effective assistance ultimately impact not only whether people are convicted of crimes based on fair processes but moreover, whether innocent people are convicted of crimes they did not commit. These are both outcomes whose probabilities should be reduced whenever and however feasible." Note, The Paper Tiger of Gideon v. Wainwright and the Evisceration of the Right to Appointment of Legal counsel for Indigent Defendants (2005), 3 Cardozo Pub.L, Policy EthicsJ. 495, 500. (Footnote omitted.)
 {¶ 31} The rights guaranteed to citizens under the Constitution are clearly defined and include the right to effective and competent assistance of counsel, the right *Page 10 
to subpoena witnesses, the right to confront one's accusers and above all a right to a fair trial. Counsel must be given ample opportunity to prepare, investigate and discover the facts of the accusation. Furthermore, counsel must have time to investigate witness testimony, the nature of the allegations, and develop possible defenses in order to properly represent his or her client and provide effective assistance. The right to a speedy trial is a right both constitutional and statutory which inures to the defendant not the court.
 {¶ 32} By denying appellant's motion for a continuance, Judge Plough improperly placed an administrative objective of controlling the court's docket above its supervisory imperative of facilitating effective, prepared representation and a fair trial.
 {¶ 33} Appellant's second assignment of error is with merit.
 {¶ 34} In his third assignment of error, appellant alleges that this court was not the proper forum for curing the types of defects in this matter.
 {¶ 35} Strickland v. Washington (1984), 466 U.S. 668, 687, states:
 {¶ 36} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by theSixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction *Page 11 
* * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 37} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 38} In the case sub judice, had defendant Scott been convicted, his right to the presumption of innocence would have been unfairly replaced by a burden on appeal to demonstrate a "reasonable probability" that the result of the proceeding would have been different if appellant had been prepared. In denying a continuance, Judge Plough improperly relied on the appellate process to correct the likely deprivation of defendant Scott's constitutional right to effective assistance of counsel. Direct appeal is not a reliable remedy to fix an obvious error, which could have been prevented at inception. The judicial system, the state, the defendant, and the public are always best served when the proceedings and the trial are performed with a "best practices" approach to adhere to constitutional and statutory requirements, especially when the trial record is limited. Also, by the time an appeal would have been perfected, defendant Scott's sentence would have likely been expired. Appellate courts should not be used to *Page 12 
correct errors, especially those involving constitutional rights that a trial court has anticipated and which could have been prevented.
 {¶ 39} Appellant's third assignment of error is with merit.
 {¶ 40} For the foregoing reasons, appellant's first assignment of error is not well-taken. However, appellant's second and third assignments of error are with merit. The judgment of the Portage County Municipal Court, Kent Division, [removed affirmed in part] is reversed with respect to holding appellant in contempt. It is ordered that appellee is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.
MARY JANE TRAPP, J., concurs in judgment only,
TIMOTHY P. CANNON, J., concurs in part and dissents in part with Concurring/ Dissenting Opinion.
[1] This court has adopted the rationale and holding of theSherlock court, which we will further address in appellant's second assignment of error. See Hubbard v. Cawley (Nov. 21, 2001), 11th Dist. No. 2000-T-0031, 2001 Ohio App. LEXIS 5203, at 2-6.
[2] A notice of contempt charge was filed on August 16, 2007. Appellant initially filed a notice of appeal with this court on that judgment entry. On October 19, 2007, we dismissed appellant's appeal because there was no final appealable order. State v. Jones, 11th Dist. No. 2007-P-0078, 2007-Ohio-5609.
[3] Bond was posted by appellant on August 17, 2007.
[4] According to his August 24, 2007 affidavit, Hall testified that based on his review of the information submitted by appellant, he opined that appellant would have per se provided ineffective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and the Ohio Rules of Professional Conduct 1.1, 1.3, and 8.4(a) if he had proceeded to trial.
[5] Various amici, including the Federal Public Defender for the Northern District of Ohio and Eight Ethics, Criminal Defense and Public Interest Institutions and Associations filed briefs supporting appellant's arguments.