[Cite as *Shelton v. Huff*, 2014-Ohio-1344.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| RANDY SHELTON, et al., | : | **O P I N I O N** |
| Plaintiffs-Appellees, | : | |
| - vs - | : | **CASE NO. 2012-T-0101** |
| REGGIE HUFF, | : | |
| Defendant-Appellant. | : | |

Civil Appeal from the Trumbull County Court, Central District, Case No. CVG1200390.

Judgment: Affirmed.

*Randy Shelton,* pro se, and *Carol Shelton*, pro se, 3501 Sodom Hutchings Road, Cortland, OH 44410 (Plaintiffs-Appellees).

*Reggie Huff,* pro se, 147 N. Mecca Street, Cortland, OH 44410 (Defendant-Appellant).

DIANE V. GRENDELL, J.

{¶1} Defendant-appellant, Reggie Huff, appeals from the Journal Entry of Eviction of the Trumbull County Court, Central District, issuing a writ of restitution in favor of plaintiff-appellees, Randy and Carol Shelton. The issues to be determined by this court are whether a defendant's asserted counterclaims must be addressed during a hearing for forcible entry and detainer and whether the court acted with bias when it made negative comments regarding the defendant's arguments raised at the hearing. For the following reasons, we affirm the judgment of the court below.

{¶2} On November 26, 2012, the Sheltons filed a Complaint in Forcible Entry and Detainer, seeking to have Huff removed from the premises he was renting from them, located at 147 North Mecca Street, in Cortland, Ohio. The Sheltons also raised a damages claim for past due rent.

{¶3} On November 30, 2012, Huff filed a Motion for Clarification, requesting information regarding the relationship between the Sheltons and the court's clerk, Evelyn Shelton. Huff also filed a Motion for Joinder of Causes of Action, in which he requested to "join Plaintiff['s] causes of action pursuant to Ohio R.C. 1923.081."

{¶4} A hearing was held on the forcible entry and detainer matter on December 7, 2012. Randy Shelton testified that Huff paid his rent late seven times, paid only partial rent in October, and had not paid rent for November or December. Huff testified that he had overpaid rent in the past, had "never been late on the rent," and had "never failed to pay the rent."

{¶5} On December 7, 2012, the court issued a Journal Entry of Eviction, entering a writ of restitution, and ordering that Huff return possession of the premises to the Sheltons. The Entry also continued the matter of monetary damages for a separate hearing.

{¶6} On December 11, 2012, Huff filed a Demand for Full Disclosure Upon Suggestion of "Sham" Proceeding, in which he raised various errors he believed occurred during the hearing. The Court issued an Order Striking Pleading on December 12, 2012.

{¶7} Huff filed a Motion to Vacate Judgment on December 14, 2012, which was stricken by the court on the same date.

{¶8} On December 14, 2012, Huff filed his Notice of Appeal and raises the following assignments of error:[1]

{¶9} "[1.] The Trial Court erred by failing to either consider or rule on a timely unopposed motion for joinder under R.C. 1923.081 establishing 'good cause' for joinder.

{¶10} "[2.] The Trial Court Judge Campbell erred by failing to properly address and remedy conflict involving Plaintiff's close family relationship to Judge's head Clerk.

{¶11} "[3.] The Trial Court Judge Campbell erred in corrupting proceedings with overt bias."

{¶12} As an initial matter, we note that this court has held that, in circumstances where the landlord moved to dismiss an appeal from the trial court's grant of a writ of restitution, based on the fact that the tenant was no longer in possession of the premises, "once the tenant has vacated the premises and the landlord has again taken possession, the merits of such action are rendered moot because no further type of relief can be granted in favor of the landlord." *Fast Prop. Solutions, Inc. v. Jurczenko*, 11th Dist. Lake No. 2010-L-024, 2010-Ohio-5933, ¶ 3. In the present matter, Huff filed two motions for a stay with this court, on December 14, and December 17, 2012. These motions were denied, due to Huff's failure to request a stay in the lower court. Presumably, then, Huff was evicted from the premises in December, given that the court's December 7, 2012 Journal Entry in Eviction ordered that the writ of restitution be executed within 10 days of the Entry. No appellees' brief or motion was filed by the Sheltons confirming that Huff has been evicted and no longer lives on the premises and Huff lists on his brief that it was "forwarded from" the address of the 147 North Mecca Street premises, although in an answer filed in the lower court after his notice of appeal,

---

1. The Sheltons did not file an appellees' brief.

3

he raises a counterclaim for wrongful eviction. To the extent that there is any question as to whether Huff remains in the premises, we will address the merits of his appeal.

{¶13} In his first assignment of error, Huff argues that the trial court failed to rule on his Motion for Joinder. He argues that this Motion should have been granted, since he was entitled to have his causes of action joined pursuant to R.C. 1923.081.

{¶14} An appellate court must find that the trial court abused its discretion in denying a motion for joinder. *Palomba v. Hayes*, 8th Dist. Cuyahoga Nos. 65781 and 66714, 1995 Ohio App. LEXIS 1572, 14 (Apr. 13, 1995).

{¶15} At the December 7 hearing, the court addressed the Motion for Joinder and stated that Huff would have the opportunity to raise counterclaims during the second cause of action, relating to the past due rent, but not during the present forcible entry and detainer proceedings. The court found that the motion was "premature and not relevant to this portion of this proceeding."

{¶16} After the foregoing discussion at the hearing, no written ruling was issued on the Motion. This court has recognized that, as a "general proposition, if a trial court fails to issue a written ruling on a pending motion prior to the release of the final judgment in a civil action, it is presumed that the court intended to deny that motion." (Citation omitted.) *Aurora Loan Servs., LLC v. Cart*, 11th Dist. Ashtabula No. 2011-A-0070, 2012-Ohio-5024, ¶ 16; *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 13. As noted above, the court did orally deny the motion at the hearing as well.

{¶17} Therefore, we will consider whether denial of the Motion for Joinder was proper.

4

**{¶18}** In essence, Huff's argument is based on his contention that he should have been allowed to file defenses and/or counterclaims prior to the hearing on the forcible entry claim, pursuant to R.C. 1923.081.

**{¶19}** R.C. 1923.081 provides, in pertinent part, the following:

A trial in an action for forcible entry and detainer for residential premises * * * pursuant to this chapter may also include a trial on claims of the plaintiff for past due rent and other damages under a rental agreement, unless for good cause shown the court continues the trial on those claims. For purposes of this section, good cause includes the request of the defendant to file an answer or counterclaim to the claims of the plaintiff or for discovery, in which case the proceedings shall be the same in all respects as in other civil cases. If, at the time of the trial, the defendant has filed an answer or counterclaim, the trial may proceed on the claims of the plaintiff and the defendant.

**{¶20}** While Huff believes that this statute entitles him to be permitted to file an answer and counterclaims prior to the hearing on the forcible entry issue, as he argued at the hearing and in his brief, he misinterprets the statute. R.C. 1923.081 permits a plaintiff to file a claim for damages with the forcible entry and detainer claim, but allows for a continuation of the trial on the damages claims if the defendant requests to file an answer and counterclaim or asks for discovery. The statute does not allow a defendant to delay the forcible entry and detainer proceedings by requesting extra time to file an answer and counterclaim prior to such proceedings. As several courts have noted, R.C. 1923.081 "was not meant to alter the summary nature of eviction proceedings." *Smith v. Wright*, 65 Ohio App.2d 101, 104, fn. 2, 416 N.E.2d 655 (7th Dist.1979); *Haney v.*

*Roberts*, 130 Ohio App.3d 293, 299, 720 N.E.2d 101 (4th Dist.1998) ("although R.C. 1923.081 specifically permits joinder of forcible entry and detainer actions with related suits for damages, the General Assembly did not intend joinder to alter the summary nature of forcible entry and detainer actions").

**{¶21}** "If, at the time of the eviction hearing the defendant has filed an answer or counterclaim, the court may proceed to dispose of all matters. However, where a continuance is required to enable a defendant to file an answer and counterclaim or for discovery, the proceedings on the secondary causes of action (*i.e.*, those for back rent and damages) shall go forth in all respects as in other civil cases. This does not affect the court's right to determine the eviction action at the original hearing." *Smith* at 104, fn. 2.

**{¶22}** In *Palomba v. Hayes*, 1995 Ohio App. LEXIS 1572, the Eighth District rejected the defendant's argument that the trial court erred "by proceeding with the first cause [forcible entry and detainer] hearing rather than joining her counterclaims to the complaint under R.C. 1923.061(B) and 1923.081, and continuing the matter." *Id.* at 13. Following a hearing on the forcible entry and detainer issue, the court found that the plaintiff was entitled to possession, but the defendant was permitted to pursue her counterclaims subsequent to the initial forcible entry and detainer proceedings. Similarly, in the present matter, Huff was not prevented from ever raising his claims, but only from raising them during the forcible entry and detainer proceedings.

**{¶23}** The foregoing finding that Huff was not permitted to file an answer and counterclaim prior to the forcible entry and detainer hearing did not prevent him from defending himself at the hearing, since he was allowed, under R.C. 1923.061, to raise

6

any defense at trial. *See Harrison Parks, Inc. v. Bozarth*, 2nd Dist. Montgomery No. 20147, 2004-Ohio-2190, ¶ 12 ("an affirmative defense may be raised at trial in a forcible entry and detainer action because no responsive pleading is required").

{¶24} To the extent that Huff argues he was not allowed to properly raise defenses at the eviction proceedings, his defenses all appear to relate to the fact that there were certain conditions to the property that permitted him to withhold rent. However, as the trial court stated during the hearing, and as various appellate courts have held, this was not an acceptable defense to Huff's failure to pay the rent or to the eviction. "[I]n an action for forcible entry and detainer to determine the landlord's right to possession of the premises, the unfit condition of those premises can be in issue only if the tenant is *current in his rental payments* having paid them either directly to his landlord or having deposited them into court." (Emphasis sic.) *Smith v. Wright*, 65 Ohio App.2d at 109, 416 N.E.2d 655; *Dayton Tool Rental v. Ealy,* 2nd Dist. Montgomery No. 21849, 2007-Ohio-5366, ¶ 12, citing *Martins Ferry Jaycee Housing, Inc.*, 4 Ohio App.3d 302, 304, 448 N.E.2d 512 (7th Dist.1982) ("[w]hen a tenant is not current in his rent and has failed to make any escrow of rental payments with the clerk of courts, the trial court may properly prohibit the tenant from presenting evidence of the condition of the apartment as a defense to an action for restitution").

{¶25} Huff also argues in his brief, although not explicitly within his first assignment of error, that the lower court erred by stating that the exclusive remedy for tenants arises under R.C. 5321.07, which allows a tenant to place rent payments in escrow due to a landlord's failure to perform his duties, and that this statement was not consistent with the law set forth in *Miller v. Ritchie*, 45 Ohio St.3d 222, 543 N.E.2d 1265

7

(1989). However, the lower court was merely explaining that a tenant cannot refuse to place rent funds in escrow based on claims that the landlord did not perform his duties and then prevail in a forcible entry and detainer action on the grounds that certain conditions were not remedied by the landlord. This is not inconsistent with *Miller*, which holds that "*[a]lthough risking eviction*, a tenant who withholds but does not escrow rent does not waive the right to recover damages caused by a landlord's breach of duty." (Emphasis added). *Id.* at 224.

**{¶26}** Since there was no requirement to allow Huff's claims to be addressed or joined at the hearing on the forcible entry and detainer claim, we cannot find that the trial court erred in denying Huff's Motion for Joinder.

**{¶27}** The first assignment of error is without merit.

**{¶28}** In his second assignment of error, Huff argues that the trial court erred by not properly addressing and remedying a potential conflict, involving the head clerk's relationship with the Sheltons' family member. It appears from Huff's brief that he is arguing that this relationship caused, or could have caused, a biased ruling by the court.

**{¶29}** At the December 7, 2012 hearing, the court addressed the Motion for Clarification and noted that the court's chief clerk was married to a relative of Randy Shelton 28 years ago and that they were now divorced. The court stated that it did not see that as a conflict.

**{¶30}** As an initial matter, it appears that this issue should have been raised using the procedure in R.C. 2701.031(A), which requires a party to file an affidavit of disqualification with the clerk of the court in which the proceeding is pending, for the presiding judge of the court of common pleas to consider, if the party believes that a

8

judge "allegedly is interested in a proceeding pending before the judge, allegedly is related to or has a bias or prejudice for or against a party to a proceeding pending before the judge or to a party's counsel, or allegedly otherwise is disqualified to preside in a proceeding pending before the judge." Huff did not follow this procedure. R.C. 2701.031(E) grants "the common pleas court with the sole authority to rule on the disqualification of a municipal court judge because of bias." *State v. Jones*, 11th Dist. Portage No. 2008-P-0018, 2008-Ohio-6994, ¶ 16. "[A]n appellate court has no jurisdiction to vacate a trial court's judgment on a claim of judicial bias." *Petralia v. Petralia*, 11th Dist. Lake No. 2002-L-047, 2003-Ohio-3867, ¶ 20.

{¶31} Moreover, it is clear that the court did investigate this issue and determined that there was no conflict. Huff fails to assert how a past relationship, explained by the court as involving the clerk's prior marriage to a member of Shelton's family, would cause any conflict in the case or how it impacted the court's judgment.

{¶32} The second assignment of error is without merit.

{¶33} In his third assignment of error, Huff argues that the judge made several statements evidencing his bias against Huff and prevented him from being able to address necessary issues at the hearing.

{¶34} Again, as noted above, if Huff believed that the judge was biased, he should have filed an affidavit of disqualification.

{¶35} Even if the claims raised by Huff did not fall under the disqualification procedure, his argument still lacks merit.

{¶36} This court has held that a trial judge is "'presumed not to be biased or prejudiced, and the party alleging bias or prejudice must set forth evidence to overcome

9

the presumption of integrity.' * * * The existence of prejudice or bias against a party is a matter that is particularly within the knowledge and reflection of each individual judge and is difficult to question unless the judge specifically verbalizes personal bias or prejudice toward a party." (Citations omitted.) *State v. Pesec*, 11th Dist. Portage No. 2006-P-0084, 2007-Ohio-3846, ¶ 84.

{¶37} The record does not show a bias or a specific error in the court's rulings against Huff, especially given that the court had no prior relationship with him or reason for such an alleged bias. Huff takes issue with the court stating that he must focus on real law and could not raise "imagined" equitable claims, but he fails to view the court's statements in the entire context of the hearing. The court explained both that an equitable estoppel claim could not be raised at that point in the proceedings and ruled that the motion for joinder did not apply to the present proceedings. Huff, acting pro se, continued to make the same legal arguments after they had already been addressed by the court. This did not constitute a denial of his right to a hearing, but was merely the court's attempt to prevent Huff from raising arguments with no merit and to control the proceedings. Huff was given an opportunity to testify and explain his reasons why the forcible entry and detainer proceedings should be resolved in his favor. Huff was permitted to cite and present a case that he believed was relevant, the court considered it, and found that it did not controvert the issues already addressed by the court. The trial court's failure to rule in Huff's favor does not constitute bias. The mere fact that the court showed disdain for Huff's unmeritorious legal claims provides no basis for reversing the lower court's decision.

{¶38} The third assignment of error is without merit.

10

{¶39} Based on the foregoing, the judgment of the Trumbull County Court, Central District, issuing a writ of restitution in favor of the Sheltons, is affirmed. Costs to be taxed against appellant.


THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., concurs in part, dissents in part, with a Concurring/Dissenting Opinion.

{¶40} I concur with the majority that there was no potential conflict or judicial bias against Huff under his second and third assignments of error. However, I respectfully dissent regarding the issue of joinder of claims under Huff's first assignment of error. I believe that the majority is mistaken as to its position as this matter goes further than merely involving a damages argument as framed by the trial court. Rather, this case really involves the application of a landlord's duty and a tenant's responsibility under the Ohio Landlord Tenant Act, R.C. 5321.04, when a landlord fails to provide a habitable premise.

{¶41} A defendant has a constitutional and statutory right to file an answer to a complaint as enumerated by the Rules of Civil Procedure, specifically Civ.R. 12. In that answer, the defendant can file a counterclaim or allege various defenses for withholding

11

rent under the Civil Rules and the Landlord Tenant Act, R.C. 5321.04. This is historically called the first cause of action in a forcible entry and detainer case filed under R.C. Chapter 1923. Pursuant to the Civil Rules, the tenant's answer and counterclaim will include defenses or allegations to the charges as filed, when litigating the first cause of action in a forcible entry and detainer case.

{¶42} The allegation by Huff is that his landlord, the Sheltons, are not providing a habitable premise as defined by law. As such, Huff is not obligated to pay rent until the problem is addressed. The obligation to pay rent is a condition subsequent to the landlord providing a habitable premise. The court cannot determine damages or the second cause under a forcible entry and detainer action until it resolves the rights of the parties including the issues of habitability and rent withholding. Once the defendant/tenant files an answer and a counterclaim, it is incumbent upon the court to hold a trial or to settle those claims before determining damages. There cannot be damages if the claims have not been determined.

{¶43} In this case, the trial court did not allow Huff to present his counterclaims and defenses to the eviction despite him raising them pursuant to the statute and in accordance with the Rules of Civil Procedure. Rather, the court only allowed the landlord/plaintiff to present evidence of his reasons for eviction, but did not allow Huff to call witnesses or produce evidence in his defense. This is a clear violation of substantive and procedural due process, the outcome of which resulted in Huff losing his home to an eviction proceeding without the ability to defend, or present evidence in mitigation or of potential counterclaims against the landlord for violations under R.C. 5321.04.

12

**{¶44}** By way of background, this matter commenced on November 26, 2012 due to the Sheltons' filing of a "Complaint in Forcible Entry and Detention with Claim for Rent." The Sheltons sought to have Huff removed from the premises he was leasing from them and sought damages for past due rent. As a result, Huff answered the allegations, detailing the pest infestation, and moved to have the two claims joined. The trial court did not grant Huff's motion. Rather, the trial court held a hearing on the Sheltons' first claim involving forcible entry and detainer and did not allow Huff the opportunity to present evidence or testimony regarding his counterclaims or defenses.

**{¶45}** On December 7, 2012, the court issued an entry of eviction, entered a writ of restitution, and ordered that Huff return possession of the premises to the Sheltons. That entry also continued the matter of monetary damages for a separate hearing. Four days later, Huff filed a demand, raising various errors he claimed occurred during the hearing. The trial court issued an order striking Huff's pleading. Huff subsequently appealed the December 7, 2012 entry.

**{¶46}** "'Civ.R. 19(A) encourages, and Ohio decisional law favors a policy of liberally granting joinder. In *Ervin v. Garner* (1971), 25 Ohio St.2d 231, 236 * * *, [the] court stated that any party may request joinder "so that all claims of interest arising out of the single occurrence could be resolved."'" *Compass West Apts. v. Cassano*, 7th Dist. Mahoning No. 89 C.A. 80, 1991 Ohio App. LEXIS 843, *8m (Feb. 26, 2991), quoting *Hambleton v. R.G. Barry Corp.*, 12 Ohio St.3d 179, 184 (1984).

**{¶47}** Historically, although not required, upon the filing of a counterclaim and answer, the courts would join both the first and second causes of action to avoid the need for two hearings. The case before us involves a single occurrence. The reason

13

for the eviction was due to nonpayment of rent. Huff's position is that the premise was uninhabitable as it was infested with raccoons. Thus, this writer believes the trial court erred in failing to grant Huff's motion for joinder as the two claims are clearly intertwined. *Cassano, supra,* at *8.

{¶48} R.C. 5321.04 of the Landlord Tenant Act states:

{¶49} "(A) A landlord who is a party to a rental agreement shall do all of the following:

{¶50} "(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

{¶51} "(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

{¶52} "(3) Keep all common areas of the premises in a safe and sanitary condition;

{¶53} "(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning fixtures and appliances, and elevators, supplied or required to be supplied by the landlord;

{¶54} "(5) When the landlord is a party to any rental agreements that cover four or more dwelling units in the same structure, provide and maintain appropriate receptacles for the removal of ashes, garbage, rubbish, and other waste incidental to the occupancy of a dwelling unit, and arrange for their removal;

{¶55} "(6) Supply running water, reasonable amounts of hot water, and reasonable heat at all times, except where the building that includes the dwelling unit is not required by law to be equipped for that purpose, or the dwelling unit is so

14

constructed that heat or hot water is generated by an installation within the exclusive control of the tenant and supplied by a direct public utility connection;

{¶56} "(7) Not abuse the right of access conferred by division (B) of section 5321.05 of the Revised Code;

{¶57} "(8) Except in the case of emergency or if it is impracticable to do so, give the tenant reasonable notice of the landlord's intent to enter and enter only at reasonable times.  Twenty-four hours is presumed to be a reasonable notice in the absence of evidence to the contrary;

{¶58} "(9) Promptly commence an action under Chapter 1923. of the Revised Code, after complying with division (C) of section 5321.17 of the Revised Code, to remove a tenant from particular residential premises, if the tenant fails to vacate the premises within three days after the giving of the notice required by that division and if the landlord has actual knowledge of or has reasonable cause to believe that the tenant, any person in the tenant's household, or any person on the premises with the consent of the tenant previously has or presently is engaged in a violation as described in division (A)(6)(a)(i) of section 1923.02 of the Revised Code, whether or not the tenant or other person has been charged with, has pleaded guilty to or been convicted of, or has been determined to be a delinquent child for an act that, if committed by an adult, would be a violation as described in that division.  Such actual knowledge or reasonable cause to believe shall be determined in accordance with that division.

{¶59} "(10) Comply with the rights of tenants under the Servicemembers Civil Relief Act, 117 Stat. 2835, 50 U.S.C. App. 501."

{¶60} In addition, R.C. 5321.07 provides in part:

15

{¶61} "(A) If a landlord fails to fulfill any obligation imposed upon him by section 5321.04 of the Revised Code, * * * or any obligation imposed upon him by the rental agreement, if the conditions of the residential premises are such that the tenant reasonably believes that a landlord has failed to fulfill any such obligations, * * * the tenant may give notice in writing to the landlord, specifying the acts, omissions, or code violations that constitute noncompliance."

{¶62} "'Ohio's Landlord and Tenants Act imposes duties on landlords which were absent at common law. The General Assembly enacted R.C. 5321.07 to provide tenants with leverage to redress breaches of those duties. When a landlord fails to maintain rental property in accordance with statutory or contractual obligations, R.C. 5321.07 allows a tenant to: (1) deposit (escrow) rent with the court; (2) apply for a court order directing the landlord to remedy the condition, or (3) terminate the rental agreement." *Liggett v. Whitaker Properties*, 2d Dist. Montgomery No. 23425, 2010-Ohio-1610, ¶15, quoting *Miller v. Ritchie*, 45 Ohio St.3d 222 (1989).

{¶63} Although the majority believes this case merely involves a damages argument, I believe it goes further as this matter clearly involves contractual and statutory issues regarding habitable premises as well as one's ability to defend a lawsuit filed in court. This writer notes that in addition to a contractual agreement under a rental lease, a landlord has a statutory obligation under R.C. 5321.04(A) to provide fit and habitable premises, i.e., free from any pest infestation. *Liggett, supra*.

{¶64} The record before this court reveals that Huff filed a counterclaim detailing the issue of the raccoon infestation. Attached to his counterclaim were four letters from Huff to the Sheltons, one dated November 3, 2012, two dated November 18, 2012, and

16

one dated November 23, 2012, all regarding the raccoon infestation at the leased premises. In addition, Huff attached three animal control invoices/receipts to his counterclaim, dated November 18, 19, and 23, 2012.

**{¶65}** Nevertheless, the trial court issued a ruling on the eviction without joining the claims or providing Huff the opportunity to present a defense. Clearly, a raccoon infestation at the leased premises justifies nonpayment of rent under R.C. 5321.04(A) and would be a proper defense in this case. However, the trial court did not consider the issue of habitability or the infestation but continued it for "damages."

**{¶66}** Upon this writer's review of the record, the Sheltons were put on notice that the leased property was infested by raccoons. However, the condition was not remedied. Consider living in leased premises with such an infestation. Clearly, it would decrease your use and enjoyment of your rental property by 100 percent. I believe the record in this case supports a finding that Huff's quiet use and enjoyment of the leased premises was substantially impaired.

**{¶67}** Because I disagree with the trial court's handling of this matter, and the main outcome reached by the trial court and by the majority here, I concur in part and dissent in part.