[Cite as *Equity Mgt. I, L.L.C. v. Johnson*, 2021-Ohio-2723.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## TRUMBULL COUNTY

| | |
|---|---|
| EQUITY MANAGEMENT I, LLC, | **CASE NO. 2021-T-0009** |
| Plaintiff-Appellee, | |
| - v - | Civil Appeal from the Girard Municipal Court |
| JAMES JOHNSON, et al., | |
| Defendant-Appellant. | Trial Court No. 2020 CVG 00619 |

**O P I N I O N**

Decided: August 9, 2021
Judgment: Affirmed

*Alden B. Chevlen*, 5202 Nashua Drive, Youngstown, OH 44515 (For Plaintiff-Appellee).

*James Johnson*, pro se, 2020 Crestwood Boulevard, Youngstown, OH 44505 (Defendant-Appellant).

MATT LYNCH, J.

{¶1}    Defendant-appellant, James Johnson, appeals from the Judgment Entries of the Girard Municipal Court, issuing a writ of restitution and entering judgment in favor of plaintiff-appellee, Equity Management I, LLC, in the amount of $3,290.   For the following reasons, we affirm the judgment of the court below.

{¶2}    On September 15, 2020, Equity Management filed a Complaint for Forcible Entry and Detainer and Damages against James and Valerie Johnson, seeking that the Johnsons be ordered to vacate the residence managed by Equity as an agent for V.T.

Larney, Ltd. The Complaint alleged that the defendants failed to pay rental fees, late fees, and service charges for rent during July, August, and September 2020. Equity raised a second count for rent owed and potential property damage.

{¶3} A hearing was held on the restitution of premises cause of action on October 6, 2020. Vincent Larney owns Equity Management and the Beverly Hills Drive residence at which the defendants were tenants. When he acquired the property in December 2018, the defendants were residing there and they entered an oral agreement to pay $750 per month in rent, which they paid throughout 2019. Larney testified that, at the time of the hearing, the defendants had not paid rent for three and a half months, rent for March and May 2020 were only "half" payments, a check for June rent had bounced, July was paid, and no rent was received in August. He refused to accept a rent payment in September and a three-day notice to vacate was given on September 14.

{¶4} Larney testified that the house was in "terrible" condition when he bought it and James requested repairs. Larney opined that James' complaints began when he was unable to pay rent. Larney informed the Johnsons that some repairs could not be completed because the house needed "a whole big house rebuild" which would require them vacating, and James responded that he would no longer be paying rent.

{¶5} James Johnson testified that he received a letter to vacate in March 2020 after his wife called Larney to fix the sink, and he believed this was "retaliatory." He testified that he paid April rent subtracting $250 spent to fix items in the home and paid May, June and July in full, presenting copies of checks written for April, May and July rent. He attempted to pay August by showing Larney the receipt for a sewer repair and requested an amount to be deducted from his rent for the repair and cleanup. Larney

2

responded by showing him a printout of late charges and no payment was ultimately made.

{¶6}   Following the hearing, the magistrate issued a decision finding that the defendants were in default of the rental agreement and the court ordered a writ of restitution to issue.  The writ of restitution was issued on October 27, 2020.

{¶7}   A hearing on the second cause of action was held on December 8, 2020. Jade Larney, secretary at Equity Management, testified that at the time the Johnsons vacated, they were five months in arrears and owed $3,550 in rent and $160 in late fees. She explained that the payment for April rent, check 365, came back "stopped funds" which resulted in a deficiency in April and the funds from this check were never received by Equity.  This led to the payment of May rent being credited toward April, June credited to May, and July toward June.   Payment for rent was requested for July, August, September, and October, as well as November since Equity had not received keys or been notified that the Johnsons left the residence until November 3.  Equity expended $600 disposing of property left behind including furniture and personal items and $250 for damage to the lawn caused by the Johnsons' moving truck being driven in the yard.

{¶8}   James Johnson testified that check 365 had been "marked unusable because * * * the machine couldn't read it" and "his bank contacted Miss Larney and told them to reissue it."  He asserted that the check was "reissued" and the funds came out of his account.  As to the dispute about repairs from the sewer issue, Johnson testified that Larney did not agree to deduct the amount he requested and also would not accept their rent check in September, although his wife presented it to Larney.  James attempted to pay October rent while in court on the first cause and Larney did not accept it.  He testified

3

that the items left behind belonged to prior residents and they did not damage the lawn.

{¶9} The magistrate issued a judgment in favor of Equity for $3,290. It ordered rent in the amount of $3,015, which included $550 for July, $590 for August with a finding deducting $160 for the sewer repair bill, $750 for September and October, and $375 for November. It did not order late fees, noting that there was "no written lease agreement." It ordered $150 for disposal of items in the home, finding that "most items were present before tenant moved in" and $125 for damage to the yard. The court adopted the decision and entered judgment in favor of Equity on December 30, 2020.

{¶10} James Johnson timely appeals and raises the following assignments of error:

{¶11} "[1.] The trial court committed prejudicial error in allowing this case to continue once it knew the complaint had no merit. Appellee/plaintiff had the burden of proof, not the other way around. The preponderance should be based on the more convincing evidence.

{¶12} "[2.] The trial court abused it's [sic] discretion and is guilty of implicit bias. It allowed Appellee[']s testimony to take precedence over Appellant[']s testimony. Appellee never presented any documentary evidence.

{¶13} "[3.] The trial court committed prejudicial error by granting Appellee monetary award of $3[,]290.00. That award was not supported by reliable, probative, or substantial evidence.

{¶14} "[4.] The trial court committed prejudicial error by dismissing Appellant[']s argument of retaliation. Can you refuse rent payments and then sue for default?"

{¶15} As an initial matter, in its reply brief, Equity argues that it was not properly

4

served with a copy of appellant's brief pursuant to App.R. 13(B), which requires that "[c]opies of all documents filed by any party and not required by these rules to be served by the clerk shall * * * be served by a party or person acting for the party on all other parties to the appeal." Equity asserts that "[i]f this failure rises to the seriousness of dismissing this action, appell[ee] prays that this case be dismissed for lack of service." Equity received a copy of the brief after requesting one from the clerk, it was able to file its appellee's brief, and it did not move to dismiss in a separate motion to bring it to this court's attention prior to the completion of briefing and setting the case for oral argument. We do not find that dismissal of the appeal is warranted or required under these circumstances and will consider the merits of the appeal. *See* App.R. 3(A) ("[f]ailure of an appellant to take any step other than the timely filing of a notice of appeal does not affect the validity of the appeal, but is ground only for such action as the court of appeals deems appropriate, which may include dismissal of the appeal").

{¶16} Throughout his assignments of error, James takes issue with the court's weighing of the evidence. Generally, in a civil case, "[j]udgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978), syllabus. In the present matter, however, magistrate's decisions were issued on each of the causes of action which were subsequently adopted by the trial court and no objections were filed by the defendants. "The Rules of Civil Procedure provide that the failure to file objections to a magistrate's decision results in the waiver of the right to assign its adoption by the trial court as error on appeal: 'Except for a claim of plain error, a party shall not assign as

5

error on appeal the court's adoption of any factual finding or legal conclusion * * * unless the party has objected to that finding or conclusion as required by Civ.R. 53(D)(3)(b).'" *Karnofel v. Nye*, 11th Dist. Trumbull No. 2015-T-0126, 2016-Ohio-3406, ¶ 16, citing Civ.R. 53(D)(3)(b)(iv). "In applying the doctrine of plain error in a civil case, reviewing courts must proceed with the utmost caution, limiting the doctrine strictly to those extremely rare cases where exceptional circumstances require its application to prevent a manifest miscarriage of justice, and where the error complained of, if left uncorrected, would have a material adverse effect on the character of, and public confidence in, judicial proceedings." *Goldfuss v. Davidson*, 79 Ohio St.3d 116, 121, 679 N.E.2d 1099 (1997).

{¶17} In the first assignment of error, James argues that there was a lack of "documentary or real evidence" to support the award of past due rent and that, because there was evidence that July rent was paid, there was no default and the complaint should have been dismissed.

{¶18} While James' assertion that rent was paid in the month of July is accurate, as this issue was not disputed by Equity, testimony demonstrated this payment was credited toward the month of June because of a deficiency that began when the April rent check did not clear the bank due to an issue with the image of the check being "unusable." Although James testified that he believed this issue had been resolved and the check had subsequently gone through, contrary testimony validated a conclusion that this issue with the April rent was never resolved and Equity never received the funds from this check. While James takes issue with the lack of "documentary evidence," testimony from two separate employees of Equity Management at the first and second cause hearing regarding the non-payment of rent was presented and, if believed, supported the rent

6

claim. The magistrate, as the trier of fact, was in the best position to evaluate witness credibility and weigh the competing testimony. *Blackwell v. Wynn*, 11th Dist. Ashtabula No. 2019-A-0048, 2020-Ohio-1438, ¶ 27.

{¶19} Further, presuming that payments were up to date through the month of July, it would not warrant dismissal of the complaint but, rather, merely a finding that there was no default or rent owed for the month of July. There was further testimony that the August payment was not rendered. While James testified that he intended to make the payment and tried to negotiate a lesser payment due to costs incurred to resolve the sewer problem, James did not follow processes to avoid eviction while withholding the rent. As this court has explained, "a tenant cannot refuse to place rent funds in escrow based on claims that the landlord did not perform his duties," such as completing repairs, "and then prevail in a forcible entry and detainer action on the grounds that certain conditions were not remedied by the landlord." *Shelton v. Huff*, 11th Dist. Trumbull No. 2012-T-0101, 2014-Ohio-1344, ¶ 25 (recognizing that a party who withholds but does not escrow rent risks eviction); R.C. 5321.07. James' failure to tender the rent in full or take other actions consistent with the law to properly withhold that rent resulted in a default; Equity was not required to accept incomplete payment, nor did James ever submit at least a partial payment for August.

{¶20} The first assignment of error is without merit.

{¶21} In the second assignment of error, James argues that the court "automatically sided with the Appellee no matter what," and Equity offered limited exhibits while the Johnsons had "a plethora of marked Exhibits."

7

{¶22} There is nothing in the record to demonstrate that the court unfairly accepted or weighed only the testimony of the plaintiffs. The magistrate inquired of witnesses from both sides to further understand the facts and the Johnsons were able to fully present evidence and testimony to support their arguments. The magistrate did not make any statements showing bias or prejudice against the Johnsons. The fact that the court chose to believe the testimony of the plaintiff's witnesses does not mean it unfairly "sided" with the plaintiffs. Again, it was in the best position to determine the credibility of the witness testimony. Further, it is evident the magistrate carefully considered all of the evidence and testimony presented by both sides, given that it awarded Equity $1,270 less than it had requested. To the extent that James points to alleged inconsistencies in Vincent Larney's testimony, this will be addressed in the third assignment of error.

{¶23} Contrary to James' assertion, a party does not prevail in litigation by having a larger number of exhibits. Equity was not required to present documentary evidence to prove its claims that rent was unpaid; ample testimony demonstrated the rent deficiencies. Further, the exhibits presented by the Johnsons generally were not contradictory to the plaintiff's testimony and assertions. There was no dispute that several payments were made via the checks presented into evidence but, instead, the dispute centered around whether they were used to pay a past rent deficiency. While records documenting missed payments would have been beneficial to the trier of fact, James cites no legal authority requiring such evidence to prevail on a claim for past due rent. While not dispositive, we note Equity's argument that it did produce documentary evidence "in the form of a tenant ledger and pictures of damages to the premises." Such ledger, however, was not introduced as an exhibit, filed with this court, or otherwise made part of

8

the record. It is unclear whether the magistrate reviewed it, as the only reference to this document was Jade Larney's statement: "My book says May was paid because when he paid June that payment would go toward May." We cannot say that this was "present[ed] * * * to the Municipal Court" as the record does not clearly support such a contention. Nonetheless, for the reasons outlined above, the ledger was not required as evidence to prove the rent claims given the testimony provided.

{¶24} The second assignment of error is without merit.

{¶25} In the third assignment of error, James argues that the evidence did not support the court's award of damages, asserting that the evidence demonstrated he did not owe past rent and pointing to inconsistencies in the testimony of Equity's witnesses.

{¶26} In the present matter, there was testimony from Jade Larney, generally supported by Vincent's prior testimony, that April rent had not been paid, subsequent months were credited toward that amount, August rent was unpaid because Johnson was unable to successfully negotiate a decreased price for payment due to the plumbing services he paid for and never tendered payment, September payment was not accepted, and October payment was not made. Regardless of the reasons why payments in August and September were not made, it does not follow that they were not owed. While James testified that April rent was ultimately paid, this was not supported by documentary evidence and was contradicted by Jade's testimony. The choice to believe one witness over another does not constitute error.

{¶27} James contends that there were inconsistencies discrediting the aforementioned testimony, emphasizing that Vincent testified a few months of rent were "half paid" while Jade testified that only one month was unpaid. Specifically, Vincent

9

testified that March was not paid in full, $500 was paid in April, and May was "half" paid. Both Vincent and Jade agreed that only $500 was paid for April, although that check ultimately did not clear, and Jade did not discuss March payment. It appears there was some inconsistency between their testimony as to the May payment, since the check presented by the Johnsons demonstrated full payment and Jade testified full payment was made. Jade's testimony, which showed she reviewed the records in preparation for the second cause hearing, served to clarify payment issues and fully established which months were paid. There was no dispute that the full May payment was rendered and, in fact, the court did not award any damages for May rent. Similarly, while there appeared to be some confusion about which month's check did not clear, this was subsequently clarified by Jade and the exhibit showing the check with the notation that the check was returned due to an "unusable image"; testimony indicated that this issue with the April check led to the subsequent rent deficiencies. There is nothing to demonstrate that the inconsistencies in testimony were deliberate attempts to deceive the court or led to an incorrect award of damages following the hearing on the second cause of action.

{¶28} The third assignment of error is without merit.

{¶29} In the fourth assignment of error, James argues that the Johnsons were evicted as a retaliatory action because they requested repairs and further asserts that refusal to accept payment should not result in default.

{¶30} As explained above, this is not a case where default occurred merely due to failure to accept rent. While there is no question rent was refused in September, both July and August were found to be unpaid. James' testimony that he was willing and tried to pay August is belied by his refusal to tender a check when Larney would not negotiate

10

a lesser amount of rent for repairs. Since there were multiple months unpaid, an action was proper for forcible entry and detainer. As outlined in the first assignment of error, had James wanted to withhold rent without facing eviction for nonpayment, he could have placed funds in escrow. *Shelton*, 2014-Ohio-1344, at ¶ 25.

{¶31} As to the claim that Equity sought the Johnsons' eviction as retaliation, Vincent testified that he believed the complaints for repairs only occurred after the Johnsons were unable to pay rent. As outlined above, there was a legitimate claim that rent was unpaid justifying the action. "[W]here the landlord asserts a lawful reason for the eviction and the tenant maintains that it was, in fact, retaliatory, it is for the finder of fact to make an independent determination of the reasons for the landlord's action" and "[t]he tenant is * * * required to show, by a preponderance of the evidence, that the landlord acted due to a retaliatory motive." *Davis v. Reed*, 8th Dist. Cuyahoga Nos. 68699 and 68700, 1996 WL 347814, *6 (June 20, 1996). Under these circumstances, given the issues with rent payment, the court was entitled to reject the Johnsons' assertion that the eviction was based on retaliatory grounds.

{¶32} The fourth assignment of error is without merit.

{¶33} For the foregoing reasons, the judgments of the Girard Municipal Court, issuing a writ of restitution and entering judgment in favor of Equity, are affirmed. Costs to be taxed against appellant.

MARY JANE TRAPP, P.J.,

CYNTHIA WESTCOTT RICE, J.,

concur.